FISHER A. HILDRETH *vs.* CITY OF LOWELL.

An action of tort lies against a city by the owner of land through which its agents have un-
lawfully made a sewer.

In an action of tort against a city for breaking and entering the plaintiff's close, the defend-
ant, under an answer alleging that the city council voted to lay out and did lay out a
sewer, according to law, through the close in question, on the petition of the owners of
the close, with notice to the abutters, and before the plaintiff was owner of the close, may
introduce as a justification the proceedings of the city council laying a sewer.

A statute authorizing the city council of a city to "cause drains and common sewers to be
laid down through any street or private lands, paying the owners thereof such damage as
they may sustain thereby," is constitutional and valid.

A city ordinance, which requires the city council, before laying out a drain across private
property, to "give notice in writing to the several owners" of the property, appointing
a time and place for hearing all parties interested, and to post two or more copies of such
notice at public places in the city, is complied with by serving notice upon all known
owners personally or at their usual places of abode, and publicly posting two copies
thereof, and therein describing the premises as a passage way, without adding that they
are private property.

The return by a constable of his service of a notice issued by a city council under an ordi-
nance of the city is competent evidence, supported by his testimony that he has no doubt
of its truth, although he has no recollection of the fact of service.

Under an ordinance of a city, requiring a committee of the city council, upon laying out a
drain through private land, to report the names of all the owners of such land with the
amount of damages allowed to each, a report of the names of all those owning land abut-
ting on the sewer, without mentioning any damages, is a sufficient award that no one is
entitled to damages.

ACTION OF TORT for breaking and entering the plaintiff's
close, bounded northerly on a passage way, and southerly on
Merrimack Street, in Lowell, and building and maintaining a
drain through it. Writ dated September 9th 1856.

The answer denied the plaintiff's allegations, and alleged "that the city council in the year 1849, by resolution, laid out, according to law, a sewer in the rear of the Museum Building, so called, extending through a passage way" (the close in question) "to Merrimack Street, and there entering another common sewer or drain; that said sewer was laid out on the petition of the then owners of the close now claimed by the plaintiff, and by and with the consent of the owners and abutters; and said sewer was, according to law, laid through said passage way, deep in the ground below the cellars, on notice to the abutters, in the year 1850, before the plaintiff was the owner of said close; and that the sewer as laid is of no damage to the plaintiff."

At the trial before *Thomas*, J., it appeared that the close in question was a private passage way between two buildings, and had formerly belonged to the proprietors of the Freewill Baptist Meeting-house, and been conveyed away by them in two lots, the dividing line between which ran through this passage way; that the conveyance of one of the lots having been declared void, the title vested in certain persons as trustees for the creditors of the grantors, who held it during the year 1849 and conveyed it to the plaintiff in April 1850; and that those trustees acquired title to the other lot after the sewer was built, and conveyed it to the plaintiff in September 1852.

The defendants admitted the building and maintenance of the sewer, and in justification thereof introduced copies of the following proceedings:

1st. A petition of Walter Kidder and others to the city council of Lowell on the 29th of May 1849, representing that there was in the rear of the museum a pool of stagnant water, which was a nuisance, and asking them to "consider the propriety of causing the same to be drained;" which was referred by the city council to the joint committee on sewers and drains.

2d. The report of that committee, the material parts of which were as follows: "Your committee gave public notice to all persons and corporations known by them to be interested in

the premises, to appear before said committee" at a certain time
and place, " by publishing the substance of said petition three
weeks successively" in three newspapers published in Lowell,
" the last publication having been seven days prior to the time
appointed for the hearing; and by causing copies of said notice
to be left by Daniel G. Greenleaf, constable, with all persons
and corporations within the city, known to your committee to
be interested in the premises, and by posting copies of said
notice at the city hall and at the post-office; which notices, and
the service of the said constable thereon, are certified by said
constable, and put on file in the office of the city clerk. At the
same time and place, agreeably to notice, your committee
attended, and heard all persons interested in the premises, who
appeared and expressed a desire to be heard. No person ap-
peared to object to the laying out and building of a sewer as
petitioned for, but several of the abutters appeared and advo-
cated the necessity of its construction." The committee reported
that common convenience and necessity required that a common
sewer should be laid out and built from Merrimack Street north-
wardly " through a passage" (being the premises in question)
to another passage way in the rear of the museum building;
and appended to their report " a schedule of the names of own-
ers of land abutting upon said sewer, with the length of abutting
lines." No damages were awarded to any one for building and
maintaining this sewer, nor did it appear that the subject of
damages was acted upon by the committee.

3d. Resolutions of both branches of the city council, recom-
mending the construction of the sewer, and vote of the board
of aldermen that it should be constructed, both passed on the
2d of January 1850.

The only evidence of notice of these proceedings to the
owners or tenants of the premises, was Greenleaf's return upon
the notice to parties interested to appear before the committee
on sewers and drains, that he had served it by delivering copies
thereof to certain other persons, and leaving copies at the places
of abode of others, and posted copies at the city hall and post-
office; and his testimony " that he had no doubt in his own

mind that his return as to such service was true, but could not recollect any such service as an act of memory, and the return did not refresh his memory upon that point."

The sewer was built in the summer of 1850, and the plaintiff, being the owner and occupant of part of the premises, forbade those having charge of the work to enter upon the premises to dig up the soil or to construct the sewer.

Upon these facts, the presiding judge, inclining to the opinion that the action could not be maintained, took a verdict for the defendants, and reported the case.

*B. F. Butler,* for the plaintiff. 1. An action of tort lies against a municipal corporation for an act done by its direction or procurement, or sanctioned by it. *Thayer* v. *Boston,* 19 Pick. 516. *Baker* v. *Boston,* 12 Pick. 184. *Stetson* v. *Faxon,* 19 Pick. 154. *Green* v. *Portland,* 32 Maine, 433. *Peck* v. *Ellsworth,* 36 Maine, 393.

2. The justification under the proceedings of the city council was not specified in the answer, and was not therefore open to the defendants at the trial.

3. The provision of § 9 of the city charter, *St.* 1836, *c.* 128, that " the city council may cause drains and common sewers to be laid down through any streets or private lands, paying the owners thereof such damage as they may sustain thereby," is unconstitutional. Private property can be taken only for public purposes, and making compensation. Declaration of Rights, art. 10. The act complained of was for private benefit. All sewers and drains are made by statute the private property of the city. *St.* 1841, *c.* 115. Rev. Sts. *c.* 27. *Boston* v. *Shaw,* 1 Met. 135. The statute authorizing the injury not having prescribed the mode of compensation, an action lies at common law. *Stevens* v. *Middlesex Canal,* 12 Mass. 466. *Woods* v. *Nashua Manuf. Co.* 4 N. H. 527.

4. The defendants did not comply with their own ordinances, and therefore cannot justify under the proceedings of the city council. *Lowell* v. *Hadley,* 8 Met. 194. By those ordinances, a drain or sewer cannot be constructed through or across private land, unless a joint committee of the city council, seven days

at least before the hearing, shall " give notice in writing to the several owners " of the land, appointing a time or place of meeting and hearing all parties interested, and post two or more copies of such notice at public places in the city; and report the names of all such owners sustaining damage, with the amount of damage proper and reasonable to be awarded to each of them. City Ordinances of Lowell of 1854, *c.* 15, §§ 1, 2; *c.* 2, § 8.

There was no notice to the plaintiff or his grantor or any other person of any intention to lay a sewer through the prem ises described in the writ, or through any private lands, but only through a passage way. No person can be deprived of his property without notice. *Commonwealth* v. *Weiher,* 3 Met. 447. The constable had no recollection of having served the notice, but only supposed so from his return, which the law did not provide for, which was no evidence, and which, as a memorandum, did not refresh his memory. The ordinance did not authorize serving the notice by leaving it at the residence of a party.

5. The report of the committee does not, as required by the ordinance, give the names of the owners of the private lands, nor state that they were unknown, nor state the amount of compensation to them, nor that no damage was sustained; but only gives the names of the abutters. The report should state all things done by the committee, in order that it may appear whether they have complied with the law. *Lancaster* v. *Pope,* 1 Mass. 86. *Commonwealth* v. *Coombs,* 2 Mass. 489. *Commonwealth* v. *Great Barrington,* 6 Mass. 492.

*A. R. Brown,* for the defendants.

The decision was made in October 1859.

MERRICK, J. 1. There is no doubt but that an action of tort may be maintained against a town or city to recover damages for a trespass committed by any of its agents or officers acting under its authority, or in pursuance of directions given them, upon the property or estate of another party. This is the settled and established law of this commonwealth, as is clearly shown by the decisions of this court in the several cases cited by the

counsel of the plaintiff. And therefore, since it is admitted by
the defendants that they built and still maintain their common
drain upon and through his lands as is alleged in the declaration,
he has a good cause of action, and ought to prevail against
them, unless the defence upon which they rely exhibits a good
and legal justification of the acts complained of.

2. They rely upon the proceedings of the city council in laying
out and establishing a drain or common sewer, which extends
through and under certain public streets in the city, and in and
through land belonging to the plaintiff, over which there is a
private way. The plaintiff objects that they cannot avail them-
selves of this defence, because the facts are not specified and
set forth in their answer, in clear and precise terms, according
to the requirements of the St. of 1852, c. 312, § 18. But upon
recurring to the allegations in the answer, it is very clear that
there is no ground for this objection ; for it is there expressly
stated, as a special and distinct matter of defence, that the city
council in the year 1849, by a resolution duly adopted, laid out
according to law a drain from the rear of the Museum Build-
ing through a passage way there situate to Merrimack Street.
This is the same drain of the building and maintaining of which
the plaintiff complains, and the passage way referred to over
and upon that part of his land where he alleges that trespass
was committed. It would be difficult to express the matter
relied upon in avoidance of the action in terms more direct and
explicit than these ; and the defendants may therefore avail them-
selves of it in defence.

3. The plaintiff next contends that the proceedings above de-
scribed of the city council were so irregular and illegal that they
must necessarily be held to be inoperative and void.

The act incorporating the city of Lowell authorizes and em-
powers the city council to cause drains and common sewers to
be laid through any of its streets, and through private lands, upon
the payment to the owners thereof the damages which they sus-
tain thereby. St. 1836, c. 129, § 9. The purpose of the legislature
in the enactment of this provision is very plain. It was to place
in possession of the city council the means of abating nuisances

offensive to the community and dangerous to the health of the people. The objects therefore to be accomplished by the exercise of the power it confers are so obviously connected with means to be adopted for the promotion of the general welfare of the community, and in which all citizens have a common interest, that the suggestion of a want of constitutional power in the legislature for its enactment seems to be entirely without foundation.

4. The city council, considering, and rightly considering, it to be a perfectly valid enactment, proceeded, by the establishment and adoption of suitable by-laws and ordinances, to determine the manner and circumstances in and under which it might be availed of. By these ordinances it was provided and directed that before a drain or common sewer should be located or established through private lands, notice in writing should be given to the owners of the land through which it should be laid. City Ordinances, c. 22, § 8; c. 15, § 1. And the plaintiff contends that the location of the drain through his land was illegal, because notice was not given according to the requirements of the ordinance to those persons to whom it at that time belonged. But in addition to the delivery of copies of the notice to various individuals in person and to others at their respective places of abode, public notice was given by posting up one copy thereof at the city hall and another at the post-office. This was a sufficient compliance with the directions of the ordinance in relation to all the owners of land, where they were non-residents or unknown to the officers of the city. It did not appear at the trial to whom the land now owned by the plaintiff did in fact belong when the proceedings relative to the location of the drain took place, or that any of the officers of the city had knowledge of the existing state of the title therein. The premises were at one time the property of the Freewill Baptist Meeting-house. It is obvious however that there were difficulties in ascertaining or determining who were subsequently the rightful owners of the land. One conveyance, certainly, was made under such circumstances that it was afterwards declared to be illegal and void,

and different parties preferred their respective claims to the estate. And it was undoubtedly this difficulty which induced the committee, to whom the petition for a drain had been referred, to give public notice to all persons interested of the intended action of the city in the location of it, by causing the substance of the petition to be printed in certain newspapers there published, and by causing also copies of the notice to be posted at the post-office and at the city hall, as is stated in the return of the constable. In the then existing uncertainty concerning the ownership, such public notice to all persons interested seems to be the only safe and effectual, and indeed the only practicable means by which the proprietors of the land could have been apprised of the intended action of the city authorities in the location of the drain. The proceedings of the city council are not therefore invalidated by any failure to give all requisite notice to the owners of land over and through which the drain was laid.

5. Nor does any such consequence result from the omission of the committee to award compensation to such owners, or to give their names, or report that they were unknown, or to state that there was any action upon the question of damages. They did in fact report that at the proposed time and place the committee attended, and heard all persons interested in the premises, who then appeared and expressed a desire to be heard. And they add that no person appeared to object to the laying out and building the sewer as petitioned for; but that several of the abutters appeared and advocated the necessity of its construction. It would have been more correct and regular to have added the names of the several owners of the land through which the drain was to be constructed, and to have stated the reasons why no damages were awarded to any of them. It may be that they all waived their respective claims to compensation; and if they did so, they would afterwards be precluded from setting up any; and there was consequently no occasion for any assignment or award of damages. But if there was no such waiver, then the omission to mention the name of the owner, or to state whether damages were or were not awarded

to him, was, so far as he was concerned, equivalent to an express adjudication that he was entitled to no damages. And he would in that case have been at liberty to pursue the further remedies provided by law for his relief and remuneration. He might immediately have applied for a jury to revise the proceedings in reference to the injury done to his property, and to assess the damages to which he was entitled. *Eaton* v. *County Commissioners*, 7 Gray, 109. Thus all his rights were as effectually protected by the omission to mention his name or the subject of damages, as if it had been in terms stated that the committee had formally adjudged that he was in no way injured and ought to recover no compensation.

These are the principal objections argued against the legality of the action of the city council in the location of the drain from the street in the rear of the museum through the passage way and land of the plaintiff to the sewer on Merrimack Street. There are some others of minor importance, which have been suggested by the counsel for the plaintiff. But without entering upon any further discussion in relation to any of his objections, we think it sufficient to say, that none of them can in our opinion be sustained upon any sound legal principle ; and therefore there must be

*Judgment on the verdict for the defendants.*